# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION
# AT COVINGTON

CIVIL ACTION NO. 10-57-JBC-CJS

SHAMIL A. MUQUIT                                                                    PETITIONER

v.                      **REPORT AND RECOMMENDATION**

**RANDY WHITE, WARDEN,**
**GREEN RIVER CORRECTIONAL COMPLEX**                  RESPONDENT

\* \* \* \* \* \* \* \* \* \*

On March 22, 2010, Petitioner Shamil A. Muquit, pro se, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (R. 1). On July 6, 2010, Respondent filed an Answer and Response to the § 2254 Petition (R. 6), and a Motion to Dismiss (R. 7), to which Muquit filed a Response. (R. 10). Having all relevant documents before the Court, the matter is now ripe for consideration and preparation of a Report and Recommendation. 28 U.S.C. § 636(b). For the reasons set forth below, it is recommended that Respondent's Motion to Dismiss be **granted**, and Muquit's § 2254 Petition be **denied**.

**I.    BACKGROUND**[1]

On September 24, 1999, a Kenton County Grand Jury returned an Indictment charging Muquit with first-degree sodomy and first-degree burglary for an assault that occurred in the victim's home on July 18, 1999. (R. 6-21, at 3). On February 25, 2000, the grand jury returned a subsequent

---

[1] Under § 2254(e)(1), a state court's findings of fact are presumed correct and may be rebutted by a petitioner only by clear and convincing evidence to the contrary. *Mitchell v. Mason*, 325 F.3d 732, 737-38 (6th Cir. 2003); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

Indictment charging Muquit with the additional charges of first-degree rape, a second count of first-degree burglary, three counts of receiving stolen property, and one count of second-degree persistent felony offender. (*Id*.)

On March 6, 2001, Muquit's jury trial began on five of the charges. (*Id*. at 4). On March 9, 2001, the Jury returned a verdict of guilty on the charges of burglary, rape, and one count of receiving stolen property over $300, and not guilty on the sodomy charge. (*Id*.). After the second phase of the trial was concluded, the jury returned a guilty verdict on the charge of second-degree persistent felony offender. (*Id*.). On April 16, 2001, the Kenton Circuit Court entered judgment sentencing Muquit to a total term of imprisonment of twenty years. (*Id*.). On August 22, 2002, the Kentucky Supreme Court affirmed Muquit's conviction and sentence on direct appeal. (R. 6-7).

Muquit filed a Motion to Vacate or Set Aside Judgment pursuant to Kentucky Civil Rule 60.02, which was denied initially and on appeal. After the Kentucky Supreme Court denied discretionary review of his Rule 60.02 motion, Muquit filed a Motion to Vacate Judgment of Conviction pursuant to Kentucky Civil Rule 11.42, raising the ineffective assistance of counsel arguments he raised in the case at bar. Muquit appealed the denial of his Rule 11.42 motion to the Kentucky Court of Appeals, which affirmed the Kenton County Circuit Court's decision denying the motion. The Kentucky Supreme Court denied Muquit's request for discretionary review. Having exhausted his state law remedies, Muquit filed the pending Petition under § 2254, asserting four claims of ineffective assistance of counsel.

II. **ANALYSIS**

Muquit's Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v.*

*Murphy*, 521 U.S. 320, 326-27 (1997). The AEDPA sets forth the substantive standards for granting habeas relief by providing:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams*, 529 U.S. at 405-06). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Here, the crux of all of Petitioner's claims is that the victim did not initially report that there had been vaginal penetration during the attack. Instead, she first reported an attempt of sodomy, which was unsuccessful because the assailant was not able to maintain an erection. The victim testified at trial to slight penetration, but Muquit did not learn of the victim's August 1999 statement to police, wherein she first reported penetration, until trial. Muquit alleges that his trial counsel was ineffective because counsel: 1) failed to investigate and file a motion to dismiss the Indictment on the basis of prosecutorial misconduct for knowingly presenting false testimony to the grand jury; 2) failed to object to the prosecutor knowingly introducing the victim's false testimony at trial; 3) failed to effectively cross-examine and impeach the victim with her prior inconsistent statements; and 4) failed to discover and use exculpatory evidence at trial, namely the victim's August 1999 statement reporting penetration.

Muquit raised his ineffective assistance of counsel claims in his 11.42 motion in the Kentucky courts. (R. 6-21 & 23). The Kenton County Circuit Court rejected Muquit's arguments and entered a decision denying his 11.42 motion. (R. 6-21). This decision was affirmed by the Kentucky Court of Appeals. (R. 6-23). Both the Kenton County Circuit Court and the Kentucky Court of Appeals set forth the applicable standard under *Strickland v. Washington*, 466 U.S. 668, 687 (1984),[2] and found that Muquit had not established that his counsel's conduct fell below an objective

---

[2] In *Strickland*, the Supreme Court established the two-part test for evaluating claims of ineffective assistance of counsel. To prevail on an ineffective assistance of counsel claim, a defendant must first demonstrate that his counsel's performance was deficient. *Id.* This requires a defendant to show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. The court must "indulge a strong presumption" that counsel's conduct was reasonable and might be considered sound trial strategy. *Id.* at 689-90 (citation omitted). The second prong of the test requires a defendant demonstrate that the deficient performance prejudiced his defense. *Id.* at 687. This requires a defendant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 694.

standard of reasonableness or that there was a reasonable probability that, but for counsel's errors, the result of the trial would have been different. For the reasons discussed below, the state courts' application of *Strickland* to Muquit's ineffective assistance of counsel claims was not objectively unreasonable, and therefore his § 2254 Petition fails.

A.  **Dismissal of the Indictment**

Muquit argues that his counsel was ineffective for not seeking a dismissal of the second Indictment based upon the prosecutor knowingly presenting McGuffey's false testimony to the grand jury. Muquit argues that during the second grand jury proceeding, on February 25, 2000, Detective McGuffey gave false testimony when he stated that the victim reported on July 18 and 19, 1999, that Muquit penetrated her during the assault. Muquit alleges that the prosecutor knew that McGuffey's testimony was false and that his counsel should have sought dismissal of the Indictment on this basis.

In rejecting Muquit's claim, the Kentucky Court of Appeals stated:

> Appellant next claims that his trial counsel was ineffective in not filing a pretrial motion to dismiss the indictment based on prosecutorial misconduct. However, Appellant does not state what this prosecutorial misconduct was. Appellant only discusses what he believed to be the perjured testimony of Detective McGuffey.
>
> At a preliminary hearing, Detective McGuffey testified that the victim had stated there had been no penetration. Then, during the grand jury proceedings, Detective McGuffey testified that the victim stated there had been slight penetration. Even if we were to assume the event which Appellant alleges is misconduct is that the prosecution allowed Detective McGuffey to change his testimony, this does not rise to prosecutorial misconduct. Appellant presents no evidence that the change in Detective McGuffey's testimony was anything more than a clarification due to further investigation. There is no evidence of perjury and therefore trial counsel did not have a duty to file a motion to dismiss the indictment.

(R. 6-23, at 5-6).

5

Petitioner has not submitted any evidence that the prosecutor's conduct during the grand jury proceedings violated a specific constitutional right or that it was so egregious as to render the proceedings fundamentally unfair. *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997). Moreover, to the extent Muquit argues the prosecutorial misconduct is based upon Detective McGuffey's testimony before the grand jury, there is no evidence that his testimony constituted perjury.

To the contrary, in the victim's July 19, 1999, statement to police, she indicated she felt slight penetration during the attack.[3] In addition, according to the opinion of the Kentucky Supreme Court, the victim gave a statement[4] to the police in August 1999, six months before the grand jury proceedings at issue, wherein she reported penetration. The Kentucky Supreme Court summarized the facts that occurred at trial regarding the Government's failure to provide the August 1999 statement to Muquit:

> Detective McGuffey testified after the victim. During Appellant's cross-examination of Detective McGuffey, McGuffey referred to a statement by the victim taken in August 1999. Defense counsel requested to see this statement because he was not aware that [the victim] had made a statement after July. The jury was excused while counsel read the statement. The statement by the victim indicated that during the assault there had been penetration. This was important to the defense because the victim's prior statements did not mention penetration, although her testimony at trial indicated slight penetration. The statement was also important to the defense as impeachment evidence because [the victim] had testified that she did not make a statement to the police after July 1999.

---

[3]In her recorded statement, the victim stated: "I felt his penis around my, my butt and around kind of you know around down there, cause I was laying on my stomach and I felt like maybe he was trying to put his penis inside of me and I felt it, but I don't think that it went all the way in, I, I'm pretty sure that it didn't." (R. 1-6, at 1).

[4]The victim's August 1999 statement to police is not part of the record of this case. The Court, however, can presume the state court's findings of fact are correct and may be rebutted by the Petitioner only by clear and convincing evidence to the contrary. *Mitchell*, 325 F.3d at 737-38; *Warren*, 161 F.3d at 360-61. Here, Muquit does not attempt to rebut the Kentucky Supreme Court's finding regarding the content of the victim's August 1999 statement.

> After defense counsel had an opportunity to read the statement and assess the situation, a hearing was held. Appellant suggested a mistrial because he should have received the statement during discovery. Instead, the trial judge offered Appellant a continuance to investigate the statement and make any necessary changes in trial strategy. Appellant declined this offer. Appellant next suggested that the charges for rape and sodomy should be amended to attempt charges. The trial judge denied both of those motions, but ruled that [the victim's] statement could not be used by the prosecution to bolster the penetration claim. The judge further ruled that if Appellant attempted to impeach [the victim] by referring to her August statement, then the door would be open to the prosecution to introduce the statement. Appellant now claims that this ruling was error and he requests reversal of his conviction.

(R. 6-7, at 7-8).

In order to effectively assert a post-trial attack on the Indictment based upon prosecutorial misconduct, the Petitioner must show "significant misconduct before a court can find that an indictment undermined the fairness of the ensuing trial." *Blalock v. Wilson*, 320 F. App'x 396, 415-16 (6th Cir. 2009); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Here, there is no evidence to support such a finding. This Court agrees with the state court's findings that there was no evidence of prosecutorial misconduct during the grand jury proceedings that would have given rise to defense counsel's obligation to move to dismiss the Indictment. Thus, Petitioner has not demonstrated the state court's decision denying his ineffective assistance of counsel claim for failing to seek a dismissal of the second Indictment was contrary to or an unreasonable application of federal law.

  **B.  The Victim's Testimony**

Muquit also argues that counsel should have objected to the Government presenting the victim's false trial testimony that penetration occurred and failed to impeach the victim's testimony of penetration with her prior inconsistent statements of no penetration. Muquit raised these ineffective assistance of counsel claims in his 11.42 motion in the Kentucky courts. The Kenton

7

County Circuit Court held an evidentiary hearing on Muquit's 11.42 motion to determine counsel's trial strategy for not impeaching the victim with her prior statements. (DVD: RCr 11.42 Evidentiary Hearing). The Kenton County Circuit Court held:

> In this action brought pursuant to RCr 11 42, the Defendant asserts that trial counsel's performance was deficient, in part, because of his perceived failure to impeach the victim with her prior inconsistent statement. Specifically he relies on inconsistencies between the victim's pre-trial statement to the police and her testimony at trial. In the offense report admitted as Exhibit One at the 11.42 hearing, Officer Price of the Covington Police Department recounts statements made by the victim that "She said she could feel his penis on her buttocks, but that he could not penetrate her as it was soft." Detective McGuffey, at the preliminary hearing, recounted that the victim told him that defendant tried to insert his penis in her rectum but there was no penetration. At trial, the victim testified that there was vaginal penetration. At the instant hearing, defense counsel, Hon. Michael Williams acknowledged he was aware of the statements made. He also testified that for various reasons, strategic decisions were made on methods to impeach the victim's trial testimony. Amongst trial counsel's considerations were the credibility of the victim with the jury, the defendant's admission that he had attempted penetration, counsel's awareness that the victim had given consistent statements to others concerning penetration that were revealed to him in his investigation, and the defendant's direction to counsel to proceed with a defense of consent. Defense counsel, based on his training and extensive experience, was also concerned about allowing the victim to explain to the jury what she meant by "penetration." The strategic decisions were made after discovery was completed and counsel's investigation was complete. Appropriate "Eleventh Hour" decisions were made by counsel during trial as new issues developed. The Court finds and concludes that these were legitimate strategic considerations and counsel's methods to address the inconsistencies and victim's credibility do not indicate a constitutionally deficient performance of counsel.
>
> The Court of Appeals recounts the following cross-examination of the victim by trial counsel:
>
> Defense counsel: Did you ever tell Detective McGuffey that there was penetration?
>
> [Victim]: I told him that (Appellant) was never going in and out, like sex.

> Defense counsel: In the statement that you gave him, you indicated that (Appellant) was always attempting to do something, that he was attempting to put it in?
>
> [Victim]: Uh-huh.
>
> Defense counsel: Do you remember at what point in time it changed from attempt to he actually penetrated you?
>
> [Victim]: My point is I never felt it all the way in, just the tip pushing in but not getting to go in.
>
> As stated by the Court of Appeals, "The Supreme Court held that [the victim's] testimony of penetration, regardless of however slight, was sufficient to substantiate the rape charge." The direct appeal foreclosed that issue. Thus, this Court concludes that trial counsel did in fact explore the victim's statements regarding the issue of penetration. Looking at the totality of the defense presented, the Court finds and concludes that the performance of trial counsel was not constitutionally defective. This is evident in the fact that the defendant was found not guilty of the First Degree Sodomy charge due to the lack of proof of anal penetration.
>
> Pursuant to the *Strickland* Court, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and that a defendant has the burden to "overcome the presumption that under the circumstances the challenged action might be considered sound trial strategy." *Strickland*, 104 S. Ct. at 2065. The Defendant in this case has failed to meet his burden for proving the ineffectiveness of his trial counsel. Investigation, based on this record, was constitutionally adequate. Discovery was requested by defense counsel. Prior to trial, the evidence was reviewed and a defense was formulated. During trial, appropriate issues were raised and preserved for appeal.
>
> After examining the issues and the entire record, the Court also concludes that confidence In the outcome of this trial is not undermined by any probability of a different verdict due to the performance of trial counsel.

(R. 6-21, at 5-8).

The Kentucky Court of Appeals affirmed, finding:

> During the RCr 11.42 evidentiary hearing, Appellant's trial counsel, the Hon. Michael Williams, stated that he did not use this impeachment evidence for reasons of trial strategy. Mr. Williams stated that he did not want to allow the victim to give

9

her definition of penetration to the jury and that in his professional opinion, she was a highly believable witness.

After reviewing the trial tape, it is clear to the Court that Mr. Williams did begin to question the victim on her prior statements regarding the lack of penetration, but once she began to explain what she meant by penetration, he stopped that line of questioning. However, Mr. Williams did bring out the inconsistent statements during his cross-examination of Detective Mike McGuffey; the lead detective on the case, as well as during his closing argument. We find that trial counsel made a legitimate and reasonable strategic decision in not questioning the victim on her prior inconsistent statements. Further, the inconsistent statements were brought out in other ways during the trial. This does not rise to ineffective assistance of counsel.

(R. 1-2, at 4-5).

The state courts' adjudication of Muquit's ineffective assistance of counsel claims regarding his use of the victim's belated statements of penetration was not an unreasonable application of *Strickland* and clearly established federal law. To the contrary, the Kentucky courts found that counsel's performance was one of trial strategy, which did not fall below a reasonable professional standard, and that Muquit had not established that his counsel's allegedly deficient performance prejudiced his defense so as to render the trial unfair and the result unreliable. *Strickland*, 466 U.S. at 687.

The *Strickland* Court cautioned that courts must take care to avoid "second-guess[ing]" strategic decisions that did not prove successful. *Id.* at 689. "A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001). Here, counsel was faced with the dilemma of trying to inform the jury of the victim's inconsistent statements regarding whether there was or was not penetration without giving the victim the opportunity to define what she meant by "penetration," which might have weakened the self-evident inconsistencies in the statements.

As the Kentucky Court of Appeals noted, counsel began to question the victim about the prior statements regarding the lack of penetration, but once she began explaining what she meant by penetration, he stopped that line of questioning. Counsel did, however, bring out the inconsistent statements during his cross-examination of the one of the detectives and in his closing argument. (DVD: Trial #2, at 9:13:13; DVD: Trial #3, at 9:47:30; 10:29:35-40; 12:20:08; 12:28:57-12:32:09). The decision of the Kentucky courts was not contrary to or an unreasonable application of *Strickland,* and these claims of ineffective assistance of counsel fail.

### C. The August 1999 Statement

Lastly, Muquit argues that counsel was ineffective because he failed to discover and use exculpatory evidence; specifically, the victim's August 1999 statement wherein she first reported penetration. Again, this argument was raised in, and addressed by, the Kentucky Courts. It is well established that the Government has a constitutional obligation to provide a defendant with any exculpatory evidence. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Here, however, the Kentucky Supreme Court ruled that the August 1999 statement at issue was not exculpatory but inculpatory, stating:

> [The victim's] August statement that the perpetrator penetrated her, was inculpatory, not exculpatory. And, since the August statement appears to indicate that there was penetration, the only impeachment value of that statement was to rebut [the victim's] assertion that she did not make a statement to police after the July statement. But this is hardly a damning contradiction. Any significant impeachment would be between the July statement, which the defense had access to and which does not appear to indicate penetration, and [the victim's] trial testimony where she stated that there was slight penetration. In fact, defense counsel explored this seeming inconsistency with [the victim] during cross-examination and she explained: "My point is I never felt it all the way in, just the tip pushing in but not getting to go in."
>
> Most importantly, Appellant was free to use the existence of [the victim's] August statement, as impeachment evidence as required by case law.

11

(R. 6-7, at 8-9).

The Kentucky Court of Appeals considered whether counsel was ineffective for not obtaining and investigating the August 1999 victim statement and held that counsel's conduct did not constitute ineffective assistance because there was no prejudice to Muquit. (R. 6-23, at 4-5).

The record establishes that the victim testified at trial to penetration during the attack. Muquit's counsel attempted to cross-examine her on the inconsistency between her trial testimony and her previous statements to police wherein she reported no penetration. The fact the victim gave a statement in August 1999 reporting penetration only dilutes Petitioner's argument that the victim had not previously reported penetration. Thus, counsel's failure to discover and use the 1999 statement, even if the omission constituted ineffective assistance, did not prejudice the Petitioner because the Circuit Court prohibited the prosecutor from using the 1999 statement as further evidence of the penetration. Because of the court's ruling, Muquit's counsel was able to argue the victim's testimony of penetration was inconsistent with her prior statements to the police, wherein she reported no penetration, without the jury knowing she had, in fact, reported penetration in August 1999. Thus, the Court finds the decision of the Kentucky courts that Muquit did not demonstrate any prejudice arising from counsel's failure to obtain or use the August 1999 victim statement is not contrary to or an unreasonable application of *Strickland,* and his claim of ineffective assistance of counsel in this regard fails.

## III.  CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Proceedings, effective December 1, 2009, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. A certificate may issue only if a defendant has made

a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Petitioner's § 2254 motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is recommended that a certificate of appealability be **denied** upon the District Court's entry of its final order in this matter.

## IV. CONCLUSION AND RECOMMENDATION

For the reasons stated herein, **IT IS RECOMMENDED** that:

(1) Petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (R. 1) be **denied**;

(2) Respondent's Motion to Dismiss (R. 7) be **granted**;

(3) this matter be **dismissed** and **stricken** from the active docket of this Court; and,

(4)     the issuance of a Certificate of Appealability be **denied** by the District Court in conjunction with the Court's entry of its final order in this matter.

Objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of the same or further appeal is waived. *See Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd,* 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Poorly drafted objections, general objections or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *See Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505, 509 (6th Cir. 1991). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

Dated this 27th day of October, 2010.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

G:\DATA\habeas petitions\2254 ineffective assistance counsel\10-57.wpd